[Docket Nos. 30, 38, 59]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| ANDREW BROWN, | |
| Plaintiff, | Civil No. 15-7734 (RMB/JS) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

APPEARANCES:

Andrew Brown
     Pro Se Plaintiff

Anne B. Taylor, Esq.
Office of the U.S. Attorney
District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101
     Attorney for Defendant United States of America

**BUMB,** UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon the Motion for

Summary Judgment by pro se Plaintiff Andrew Brown (the

"Plaintiff") [Docket No. 30], the Motion for Summary Judgment by

Defendant United States of America (the "Defendant") [Docket

No. 38], and the Motion for "Leave to Depose & Supplement" by

Plaintiff [Docket No. 59].  For the reasons set forth herein,

Plaintiff's Motion for Summary Judgment will be denied,

Defendant's Motion for Summary Judgment will be denied without

prejudice, and Plaintiff's Motion for Leave to Depose & Supplement will be administratively terminated as premature.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

This matter stems from the medical treatment Plaintiff received for an inguinal hernia while incarcerated, which Plaintiff claims was deficient.  Throughout the relevant time period, Plaintiff was a federal inmate at FCI Fairton.  Def. SOMF ¶ 1 [Docket No. 38-1].

Plaintiff first complained of pain caused by a hernia in his left groin on January 29, 2013.  Id. ¶ 2.  The medical staff at FCI Fairton provided Plaintiff with a hernia belt "to prevent progression of hernia" and instructed Plaintiff on how to use the belt.  Id.  On March 5, 2013, Plaintiff was medically evaluated for reports of pain due to his hernia.  The medical records note that Plaintiff complained of pain and "wants [hernia] repaired."  Def. Ex. A p. 33 [Docket No. 56].  Plaintiff was referred for evaluation of the "need for surgical repair of inguinal hernia."  Id. p. 34.  Thereafter, on March 14, 2015, the Fairton Utilization Review Committee (the "URC") referred Plaintiff's initial surgical consultation to the Fairton clinical director for evaluation.  Def. SOMF ¶ 5.

---

[1] To the extent that the parties agree on particular facts, the Court relies upon Defendant's Statement of Material Facts Not in Dispute [Docket No. 38-1].  The Court will rely upon the record for disputed facts.

Upon examination on April 5, 2013, Plaintiff complained of "pain on hernia" and "insist[ed] on getting surgery." Def. Ex. A p. 29.  The medical records indicate that Plaintiff was told to wear his hernia belt at all times and perform certain prescribed exercises.  He was also advised that "this surgery is elective; it will be prioritized based on presentation.  Will monitor hernia on a regular basis."  Id.  On April 29, 2013, the URC considered Plaintiff as a candidate for surgical consultation.  Def. SOMF ¶ 8.  The following day, the clinical director decided to defer any referral.  Id.

On June 6, 2013, Plaintiff complained that his hernia was "killing" him and that he was "in a great deal of pain [and] need[ed] surgery to fix this problem and improve [his] quality of life."  Def. Ex. B p. 55.  He was advised that he would be seen shortly and to keep an eye on the call out list.  Def. SOMF ¶¶ 9-10.  Plaintiff was examined on June 13, 2013.  He complained of pain in his left groin area from his hernia.  He reported that the hernia caused him pain when he sneezed and exercised and that the pain affected his quality of life.  Def. Ex. A p. 23.  The medical records state: "Educated about plan. As of now surgery consult was deferred.  Will continue monitoring.  Encouraged to use hernia belt."  Id. p. 24.

Plaintiff continued to complain of pain and discomfort associated with his hernia throughout July 2013.  Def. SOMF

3

¶¶ 12-15.  On July 14, 2013, Plaintiff requested surgery and was advised that he would be seen in one week.  Id. ¶ 13.  Upon examination on July 24, 2013, Plaintiff complained of daily pain in the left groin area.  The medical report states that the hernia remained without obstruction or gangrene, that it was reducible, and that a surgical consult would be done again.  Id. ¶ 16.  Two days later, the URC found that Plaintiff's hernia presented a medically necessary, non-emergent health concern. Plaintiff's case was referred to the Fairton clinical director for evaluation.  Id. ¶ 17.  Plaintiff was examined again on July 29, 2013.  The medical record for this visit states: "Case discussed in URC and was decided to have an evaluation by CD to determine need for surgery.  Left inguinal hernia is small, easily reducible and no report that the condition has interfered with his activities of daily living.  Will re evaluate [sic] condition in 6 months."  Def. Ex. A p. 19.

On September 14, 2013, Plaintiff requested surgical repair of his hernia because it was affecting his ability to exercise and because the "only cure is surgery."  Def. SOMF ¶ 20.  The following week, Plaintiff was examined and complained "that his hernia is affecting the quality of his life."  Id. ¶ 21.  The hernia was observed to be reducible and without obstruction. Id.  On October 13, 2013, Plaintiff again complained of pain due to his hernia.  Id. ¶ 22.  Plaintiff was seen the following

week, "complaining about his hernia." Id. ¶ 23. The medical records indicate that Plaintiff "was evaluated by the CD who did not recommend further treatment. Plaintiff was referred to the clinical director again because his surgery evaluation had been denied twice even though Plaintiff believed he should get the operation." Id. On October 29, 2013, the clinical director evaluated Plaintiff and recommended a surgical consultation for repair. Id. ¶ 24. On December 9, 2013, Plaintiff was advised that his medical consult for surgical repair of his hernia was referred to the regional reviewer for approval. Id. ¶ 28. On December 31, 2013, Plaintiff's medical consult for hernia repair was approved by the regional reviewer and the consult was prioritized as "medically necessary – non-emergent." Def. Ex. F p. 145.

Upon examination on January 15, 2014, Plaintiff's hernia was noted to be "inguinal, w/o obstruction or gangrene." Def. SOMF ¶ 30. At that visit, Plaintiff was "educated that the request for hernia repair surgery has been approved by regional reviewer, pending scheduling, advised to watch call out." Id. On March 5, 2014, Plaintiff was once again told that his hernia repair had been approved and was pending scheduling. Id. ¶ 32. On April 7, 2014, Plaintiff was examined for his hernia pain. He was advised that his consultation with an outside specialist was being scheduled. Id. ¶ 34. On May 8, 2014, Dr. Nauveed

Iqbal examined Plaintiff upon referral by the FCI Fairton clinical director.  Dr. Iqbal noted that Plaintiff had a hernia "which will require surgical intervention.  The procedure was discussed in detail and all questions and concerns addressed. Surgery will be scheduled on an outpatient basis." Def. Ex. D p. 134.

On June 25, 2014, Plaintiff visited health services to inquire as to his hernia repair.  Plaintiff continued to complain of pain and was advised to continue taking pain medications and wear his hernia belt at all times.  Def. SOMF ¶ 39.  Plaintiff continued to complain of hernia pain in July 2014.  Id. ¶ 40.  On August 8, 2014, the URC designated Plaintiff's surgical consult as "medically necessary – routine" and informed Plaintiff that the consult had been approved at the local level.  Id. ¶ 42.

On or around September 16, 2014, Plaintiff's hernia repair surgery was scheduled for October 3, 2014.  Id. ¶ 44.  Plaintiff underwent surgical repair of his inguinal hernia on October 3, 2014.  Id. ¶ 46.  On October 10, 2014, Plaintiff's staples were removed and his wound site appeared to be healing well.  Id. ¶ 49.  On October 15, 2014, Plaintiff reported blood at the incision site, but examination revealed that the site continued to heal well.  Id. ¶ 50.  According to Plaintiff, he began experiencing pain in his left testicle, directly below the

6

location of his hernia, since the hernia repair surgery.  Pl. Aff. ¶ 13 [Docket No. 45].  Plaintiff did not suffer from such pain prior to the hernia repair surgery and the pain persists to date.  Id. ¶¶ 15-16.

On or around November 10, 2014, Plaintiff filed an administrative tort claim related to his allegedly inadequate medical treatment.  Def. SOMF ¶ 51.  On October 27, 2015, Plaintiff filed the instant action in federal court, along with an application to proceed in forma pauperis and an application for appointment of pro bono counsel [Docket No. 1].  This Court screened the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), and permitted Plaintiff's Federal Tort Claims Act ("FTCA") claim against the United States of America to proceed, but dismissed all other claims [Docket Nos. 2, 3].  The Court granted Plaintiff's request to proceed in forma pauperis, but denied Plaintiff's request for pro bono counsel without prejudice.  Id. Defendant answered the Complaint on February 29, 2016 [Docket No. 11].

Plaintiff renewed his motion to appoint pro bono counsel on March 16, 2016 [Docket No. 14].  On April 20, 2016, Plaintiff moved to amend his Complaint to reinstate claims that had been dismissed by this Court upon screening [Docket No. 16]. Thereafter, on May 23, 2016, Plaintiff moved to appoint an expert witness [Docket No. 19].  The Court denied Plaintiff's

7

motion to appoint pro bono counsel on August 2, 2016 [Docket Nos. 25, 26].

Plaintiff filed the instant Motion for Summary Judgment on August 15, 2016 [Docket No. 30], and renewed his request for the appointment of pro bono counsel on September 1, 2016 [Docket No. 35]. On September 9, 2016, Defendant filed its Motion for Summary Judgment [Docket No. 38]. In connection with its Motion for Summary Judgment, Defendant submitted an expert report from Dr. Nathaniel R. Evans II, who opined that the medical treatment Plaintiff received at FCI Fairton for his inguinal hernia did not deviate from the applicable standard of care [Docket No. 38-8]. While Plaintiff's previous motion to appoint pro bono counsel remained pending, Plaintiff once again moved to appoint pro bono counsel on October 11, 2016 [Docket No. 43]. On December 9, 2016, the Court denied Plaintiff's motions to appoint pro bono counsel, as well as Plaintiff's motion to appoint an expert witness [Docket Nos. 52, 53]. On December 13, 2016, the Court denied Plaintiff's motion to amend his Complaint [Docket No. 54]. Subsequently, on January 22, 2017, Plaintiff notified the Court that he was no longer incarcerated [Docket No. 57]. On March 9, 2017, Plaintiff submitted a motion for leave to depose Defendant's medical expert, Dr. Evans, and to supplement the summary judgment record [Docket No. 59].

The Court now addresses Plaintiff's Motion for Summary Judgment and Motion for Leave to Depose & Supplement, as well as Defendant's Motion for Summary Judgment.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]  A fact is "material" if it will affect the outcome of the suit under the governing law[.]" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." <u>Id.</u>

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." <u>Meyer v. Riegel Prods. Corps.</u>, 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. <u>Anderson</u>, 477 U.S. at 252.

---

[2] The Third Circuit has instructed that challenges based upon a plaintiff's failure to timely submit an appropriate Affidavit of Merit, as required by N.J.S.A. § 2A:53A-29, should be brought as motions for summary judgment as such challenges necessarily involve matters outside the pleadings.  <u>Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.</u>, 692 F.3d 283, 304 n. 13 (3d Cir. 2012).

Furthermore, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them.  Scott v. Harris, 550 U.S. 372, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)).  The nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d

10

Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc.,
561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture
may not defeat summary judgment.").

## III.   ANALYSIS

### A. Plaintiff's Motion for Summary Judgment

The FTCA "does not itself create a substantive cause of
action against the United States; rather, it provides a
mechanism for bringing a state law tort action against the
federal government in federal court.  Accordingly, the extent of
the United States' liability under the FTCA is generally
determined by reference to state law." Lomando v. United
States, 667 F.3d 363, 372-73 (3d Cir. 2011) (internal quotations
and citations omitted).  As the actions underlying Plaintiff's
claim arose in New Jersey, New Jersey state law governs his
claim for medical malpractice/negligence.

"In order to prevail on a negligence claim in New Jersey,
plaintiff must prove (1) a duty of care, (2) a breach of that
duty, (3) proximate cause, and (4) actual damages." Smith v.
Sci. Games Corp., 461 F. App'x 151, 153 (3d Cir. 2012) (citing
Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)).  "A medical
malpractice case is a kind of tort action in which the
traditional negligence elements are refined to reflect the
professional setting of a physician-patient relationship.  Thus,
a plaintiff in a malpractice action must prove the applicable

11

standard of care; that a deviation has occurred; and that the deviation proximately caused the injury." <u>Verdicchio v. Ricca</u>, 179 N.J. 1, 23 (2004).

Plaintiff filed a Motion for Summary Judgment on August 15, 2016, seeking the entry of judgment in his favor because "[t]he undisputed facts of the instant case are that (1) Plaintiff was diagnosed with an inguinal hernia on January 29, 2013; (2) that Plaintiff's inguinal hernia was not repaired until October 3, 2014; and (3) damage resulted from the 'delayed surgical intervention.'"  Pl. MSJ Br. at 3 [Docket No. 30].  Plaintiff, however, has neither addressed nor identified evidence to establish the elements of ordinary negligence or medical malpractice under New Jersey state law, as set forth above. Accordingly, Plaintiff's Motion for Summary Judgment is denied.[3]

### B. **Defendant's Motion for Summary Judgment**

On September 9, 2016, Defendant moved for summary judgment on two grounds.  First, Defendant seeks dismissal of Plaintiff's medical malpractice claim because Plaintiff has not timely filed an Affidavit of Merit, as required by N.J.S.A. § 2A:53A-29.

---

[3] Additionally, as Plaintiff concedes, <u>see</u> Pl. Opp. Br. at 3 [Docket No. 45], Plaintiff's Motion for Summary Judgment did not comply with District of New Jersey Local Civil Rule 56.1(a), which requires a movant to furnish a statement of material facts not in dispute in connection with a motion for summary judgment. "A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed."  L. Civ. R. 56.1(a).

Second, Defendant contends that summary judgment is appropriate because the evidence establishes that the treatment provided to Plaintiff for his hernia meets the standard of care and Plaintiff has not produced any evidence to rebut Defendant's expert testimony.

The New Jersey Affidavit of Merit statute, N.J.S.A. § 2A:53A-26, et seq., provides in pertinent part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A 2A:53A-27.

"Absent the plaintiff's showing of one of four limited exceptions, if the affidavit of merit is not filed within 60 (or 120) days, the failure to file requires dismissal of the action with prejudice." Nuveen, 692 F.3d at 305 (citing N.J.S.A. § 2A:53A-29). "The four limited exceptions are: (i) a statutory exception regarding lack of information; (ii) a 'common knowledge' exception; (iii) substantial compliance with the

affidavit-of-merit requirement; or (iv) 'extraordinary circumstances' that warrant equitable relief." Id. Accordingly, barring the application of one of these exceptions, Plaintiff was required to submit his Affidavit of Merit by April 29, 2016 (60 days after Defendant filed its Answer) or, upon a finding of good cause, no later than June 28, 2016 (120 days after Defendant filed its Answer).

To date, Plaintiff has not submitted an Affidavit of Merit. Plaintiff, however, has repeatedly and consistently requested the appointment of pro bono counsel for the purpose of assisting him with securing the requisite affidavit. See Pl. Motions to Appoint Pro Bono Counsel [Docket Nos. 1-3, 14, 35, 43]. Plaintiff also has moved for the appointment of an expert witness to substantiate his claim. Pl. Motion to Appoint Expert Witness [Docket No. 19]. Throughout this action, Plaintiff has explained that his incarceration and indigence have impeded his ability to obtain an Affidavit of Merit and that the appointment of counsel would enable him to make this threshold showing. Accordingly, the Court considers the purpose of the Affidavit of Merit statute and whether any of the four exceptions excuse Plaintiff's timely compliance with the requirement.

"The New Jersey legislature enacted the affidavit of merit statute as part of a tort reform package 'designed to strike a fair balance between preserving a person's right to sue and

14

controlling nuisance suits.'"  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 579 (3d Cir. 2003) (emphasis added) (quoting Palanque v. Lambert-Woolley, 168 N.J. 398, 404 (2001)). To that end, the Affidavit of Merit statute's objective is "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation."  Nuveen Mun. Trust v. Withumsmith Brown P.C., 752 F.3d 600, 603 (3d Cir. 2014) (quoting Couri v. Gardner, 173 N.J. 328, 333 (2002)); accord Natale, 318 F.3d at 580 (affidavit of merit requirement "curtail[s] frivolous litigation without preventing access to the courts for meritorious claims."). Accordingly, "[t]he purpose of the Affidavit of Merit statute is to weed out frivolous complaints, not to create hidden pitfalls for meritorious ones."  Buck v. Henry, 207 N.J. 377, 383 (2011). Moreover, the requirement "was not intended to encourage gamesmanship or a slavish adherence to form over substance." Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154 (2003).

There is no evidence or argument to support the application of the first three exceptions: lack of information, common knowledge, and substantial compliance.  The Court, therefore, turns to whether Plaintiff has demonstrated "'extraordinary

15

circumstances' that warrant equitable relief." <u>Nuveen</u>, 692 F.3d at 305.

Courts have "yet to define the full scope of extraordinary circumstances as an equitable remedy for failure to comply with the statute." <u>Vitale v. Carrier Clinic, Inc.</u>, 409 F. App'x 532, 534 (3d Cir. 2010) (quoting <u>Paragon Contractors, Inc. v. Peachtree Condo. Ass'n</u>, 202 N.J. 415, 423 (2010)). It is clear, however, that "[w]hat constitutes an 'extraordinary circumstance' is a fact-sensitive analysis; in short, the circumstances must be 'exceptional and compelling.'" <u>Seldon v. Rebenack, Aronow & Mascolo, LLP</u>, 541 F. App'x 213, 215 (3d Cir. 2013) (citing <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 162 (3d Cir. 2000)). "'[E]xtraordinary circumstances' may justify an additional extension of time, provided that the circumstances do not evidence 'mere carelessness or lack of proper diligence.'" <u>Fontanez v. United States</u>, 24 F. Supp. 3d 408, 413 (D.N.J. 2014) (quoting <u>Chamberlain</u>, 210 F.3d at 162). To excuse timely compliance with the Affidavit of Merit requirement due to extraordinary circumstances, "the Court must determine that Plaintiff 'has provided [an] adequate excuse for [his] failure to comply with the [Affidavit of Merit] statute." <u>Id.</u> (quoting <u>Chamberlain</u>, 210 F.3d at 162).

In finding that extraordinary circumstances excused the timely filing of an Affidavit of Merit by a <u>pro se</u> plaintiff who

16

was incarcerated during the statutory 120-day period but

recently released, the court in <u>Fontanez</u> explained:

> In the context of attorney conduct, courts ascertain
> whether the failure to provide a timely affidavit arose
> out of circumstances beyond or within counsel's control:
> the first supporting an extension, with the second
> militating against an extension.  Here, the failure to
> file a timely affidavit of merit rests solely upon <u>pro se</u>
> Plaintiff.  Courts in the <u>pro se</u> context have considered
> whether the failure to comply with the filing deadline
> resulted from 'carelessness, lack of circumspection,
> lack of diligence, [] ignorance of the law[,]' or failure
> to seek legal advice.  None of these reasons alone,
> however, suffice to 'excuse failure to meet the filing
> deadline.'  Therefore, <u>pro se</u> status does not, without
> more, establish extraordinary circumstances.

<u>Fontanez</u>, 24 F. Supp. 3d at 414 (internal citations omitted).

Here, Plaintiff has not demonstrated carelessness, lack of

circumspection, lack of diligence, ignorance of the law, or

failure to seek legal advice.  To the contrary, Plaintiff has

demonstrated care and attention in his submissions to the Court.

Moreover, Plaintiff has repeatedly and consistently requested

the appointment of pro bono counsel to assist him in obtaining

an Affidavit of Merit and securing expert testimony to pursue

his medical malpractice action.

These requests began during the relevant statutory period.

For example, in his initial application for pro bono counsel,

Plaintiff explained: "I will need a doctor to attest to my

claims having merit: that is, obtaining a certificate of merit

("COM").  I cannot present the COM without counsel, as I am not

qualified to do that.  It has to be done by a doctor.  And
counsel is better equipped to handle that." Pl. App. Pro Bono
Counsel [Docket No. 1-3].  Given the early stage of the case,
the Court denied that request without prejudice to Plaintiff
renewing his request "if it becomes apparent that counsel is
needed."  Screening Op. at 14 [Docket No. 2].  On March 16,
2016, Plaintiff renewed his application for pro bono counsel
based largely on his inability to obtain an Affidavit of Merit
while incarcerated and without an attorney.  Pl. Motion to
Appoint Pro Bono Counsel [Docket No. 14].  Thereafter, on April
20, 2016, still within the original 60-day statutory period,
Plaintiff filed a motion to amend his complaint [Docket No. 16],
which Plaintiff apparently believes restarted the statutory
period during which he must submit an Affidavit of Merit.  See
Pl. Opp. Br. at 6, 8-9.  Subsequently, on May 23, 2016, while
his motions to appoint pro bono counsel and to amend his
Complaint remained pending, Plaintiff moved for the appointment
of an expert witness to assist in establishing the relevant
standard of care for the treatment of an inguinal hernia [Docket
No. 19].

After the 120-day statutory period elapsed, on August 2,
2016, the Court denied Plaintiff's motion to appoint pro bono
counsel [Docket Nos. 25, 26].  Shortly thereafter, Plaintiff
filed the instant Motion for Summary Judgment [Docket No. 30].

Approximately two weeks later, Plaintiff filed a renewed motion to appoint pro bono counsel [Docket No. 35], in which he explained that "[a] lawyer will be best suited . . . for the task of dealing with an expert witness.  Plaintiff is ill prepared for this type of task.  Moreover, Plaintiff is not familiar with the F.Rules Of Evidence [sic].  Thus, PLaintiff [sic] is in dire need of pro bono counsel in the coming proceedings."  On October 11, 2016, Plaintiff filed an additional motion for appointment of counsel, in which he argued that his "imprisonment will greatly limited his ability to litigate" as "[t]he issues involved in this case will require an affidavit of merit to establish a deviation from the standard of care."  [Docket No. 43].  On December 9, 2016, the Court denied Plaintiff's motions to appoint pro bono counsel and appoint an expert witness [Docket Nos. 52, 53].  On December 13, 2016, the Court denied Plaintiff's motion to amend [Docket No. 54].

As in Fontanez, "the Court does not construe Plaintiff's position to be one of carelessness, lack of circumspection, or lack of diligence . . . .  Nor does Plaintiff's proffer demonstrate the ignorance of the law or simply a failure to act."  24 F. Supp. 3d at 415.  Rather, the record establishes that Plaintiff was limited in his ability to contact and retain an expert to prepare an Affidavit of Merit due to his incarceration and indigence throughout the statutory period

during which he was required to file an Affidavit of Merit--not
because his claim lacks merit or because of carelessness or lack
of diligence.  Indeed, the record also demonstrates that
Plaintiff diligently and repeatedly requested the appointment of
pro bono counsel in order to obtain the requisite affidavit.  He
consistently explained that his incarceration, indigence, and
unfamiliarity with the law made it difficult for him to find an
expert and obtain an Affidavit of Merit.  Plaintiff was aware of
the requirement and sought reasonable assistance in complying.
It is clear to this Court that Plaintiff's "incarceration during
the period within which to submit a timely affidavit undoubtedly
frustrated Plaintiff's ability to acquire an affidavit of
merit."  Id. at 416.

In determining whether the unique factual pattern of this
case warrants a finding of extraordinary circumstances, this
Court is "guided by the policy of [the Third Circuit] and New
Jersey courts favoring the disposition of cases on their merits
and the New Jersey Supreme Court's indication that the
'extraordinary circumstances' exception aims to temper the
draconian results of an inflexible application of the statute by
granting certain latitude to non-compliant plaintiffs."
Fontanez, 24 F. Supp. 3d at 416 (internal citations and
quotations omitted); see also In re Princeton Office Park, L.P.,
649 F. App'x 137, 141 n. 3 (3d Cir. 2016) (affirming district

court "rul[ing] based on the merits, rather than on a technicality, which is consistent with our exhortation that cases should generally be resolved on their merits.") (citing Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)).

In light of the unique factual and procedural history of this matter, including Plaintiff's diligence in requesting counsel and the appointment of an expert witness, as well as Plaintiff's incarceration and indigence during the relevant statutory period, the Court finds that extraordinary circumstances warrant an extension of time to file an Affidavit of Merit.  See, e.g., Dorval v. Ahsan, 2016 U.S. Dist. LEXIS 57290, *11-13 (D.N.J. Apr. 28, 2016) ("Courts in this district have found extraordinary circumstances sufficient to permit an extension of time to file an affidavit [of] merit when plaintiff is a pro se prisoner, who has also encountered other obstacles.") (collecting cases); Ramirez v. Nugent, 2014 WL 7404048, at *4 (D.N.J. Dec. 30, 2014) (noting that "[a]t the time the first Answer was filed, Plaintiff was proceeding pro se, which restricted his access to outside medical professionals who could provide a conforming Affidavit of Merit."); Fontanez, 24 F. Supp. 3d at 416-17 (holding that "[t]hough neither Plaintiff's former incarceration nor pro se status suffice to warrant an extension, standing alone, the cumulative impact of Plaintiff's circumstances--particularly when viewed through the

lens of Plaintiff's efforts during the sixty-day extension--
support a limited extension of time.").

To find otherwise would contravene the Affidavit of Merit
statute's purpose of "curtail[ing] frivolous litigation without
preventing access to the courts for meritorious claims."
Natale, 318 F.3d at 580.  Thus far, Plaintiff has been
incarcerated and unable to obtain a lawyer or expert to assess
the merits of his case due to no fault of his own.  Equity
dictates that Plaintiff be afforded a genuine opportunity to
present his case.

Additionally, for the following reasons, the Court shall
sua sponte appoint pro bono counsel for the limited purpose of
obtaining the requisite Affidavit of Merit.  Plaintiff's time to
submit an Affidavit of Merit shall be extended for a sixty-day
period from the date pro bono counsel is assigned and the
appointment is accepted.  See, e.g., Dorval, 2016 U.S. Dist.
LEXIS 57290, *13-14; Robins v. Robins-McCafferty, 2015 WL
6951693, at *5 (D.N.J. Nov. 9, 2015).

The Third Circuit has made clear that "indigent civil
litigants possess neither a constitutional nor a statutory right
to appointed counsel."  Montgomery v. Pinchak, 294 F.3d 492, 498
(3d Cir. 2002).  Congress, however, has granted district courts
the authority to request appointed counsel for indigent civil
litigants, pursuant to 28 U.S.C. § 1915(e)(1).  Id.  The Third

Circuit "has interpreted § 1915(e) as affording district courts 'broad discretion' to determine whether the appointment of counsel in a civil case would be appropriate.  The Tabron court found that the decision to appoint counsel may be made at any point in the litigation, and may be made by a district court sua sponte." Id. (citing Tabron v. Grace, 6 F.3d 147, 153, 156 (3d Cir. 1993)).

The threshold inquiry in determining whether pro bono counsel should be appointed is whether Plaintiff's case has some arguable merit in fact and law.  Cuevas v. United States, 422 F. App'x 142, 144 (3d Cir. 2011) (citing Tabron, 6 F.3d at 155). In previous Opinions in this action, this Court has already concluded that Plaintiff's case has at least some arguable merit in fact and law.  See, e.g., Screening Op. at 14; Opinion Denying Pro Bono Counsel at 6 [Docket No. 52].  Once the threshold showing has been made, the Court considers the following factors: "(1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case

will require testimony from expert witnesses." <u>Cuevas</u>, 422 F.
App'x at 144-45 (citing <u>Tabron</u>, 6 F.3d at 155-57).

Turning to the first factor, the Court notes that, thus
far, Plaintiff has demonstrated an ability to litigate his own
case by filing motions and briefs, including an opposition brief
to Defendant's Motion for Summary Judgment that is accompanied
by a properly supported response to Defendant's statement of
undisputed material facts [Docket No. 45-1].  At this juncture,
however, Plaintiff's case depends in its entirety upon his
ability to obtain an Affidavit of Merit and expert testimony.
The record demonstrates that Plaintiff has been unable to obtain
expert assistance in the form of an Affidavit of Merit or
testimony without counsel.  While the obstacles Plaintiff faced
while in prison may have been somewhat alleviated upon his
release, the Court nonetheless finds that these tasks may prove
exceedingly difficult for Plaintiff--an indigent <u>pro se</u> litigant
who has only recently been released from prison--without the
assistance of counsel.  <u>See</u> <u>Robins</u>, 2015 WL 6951693, at *4.
Without the assistance of counsel, Plaintiff will be unable to
obtain an Affidavit of Merit and, therefore, will be unable to
present his own case.  This factor, which is arguably the most
significant, <u>Montgomery</u>, 294 F.3d at 501, weighs in favor of the
appointment of pro bono counsel.

Next, the Court reiterates that the legal issues involved in this action are not particularly difficult or complex. Plaintiff has demonstrated an ability to understand the legal issues involved in this FTCA medical malpractice action.  This factor weighs against the appointment of pro bono counsel.  Likewise, the degree to which factual will be necessary and Plaintiff's ability to pursue investigation weighs against the appointment of counsel.  The majority of the factual investigation is complete and Plaintiff was able to obtain his medical records without counsel.

The Court turns to the fourth factor: whether Plaintiff can retain counsel on his own behalf.  Plaintiff has demonstrated his indigence and has been granted permission to proceed in forma pauperis.  Accordingly, this factor weighs in favor of appointing counsel.  The Court next assesses whether the case will turn on credibility determinations.  The case is not simply a "swearing contest", as the bulk of the evidence in this action is documentary evidence in the form of Plaintiff's medical records.  See Gordon v. Gonzalez, 232 F. App'x 153, 157 (3d Cir. 2007) (noting that, in considering whether a case will turn on credibility determinations, "courts should determine whether the case was solely a swearing contest") (quoting Parham v. Johnson, 126 F.3d 454, 460 (3d Cir. 1997)).  Nevertheless, the Court notes that, if Plaintiff is able to retain an expert that

25

supports his position that the care he received deviated from the applicable standard of care, the case may very well on the credibility of the experts involved.  This factor somewhat favors the appointment of pro bono counsel.  Finally, this medical malpractice case will clearly require testimony from expert witnesses, in addition to the Affidavit of Merit.  This factor weighs in favor of the appointment of pro bono counsel. See Montgomery, 294 F.3d at 504 (finding that need for medical expert testimony "weighs heavily in favor of the appointment of counsel"); Tabron, 6 F.3d at 156 ("appointed counsel may be warranted where the case will require testimony from expert witnesses.").

Having considered the Tabron factors, the Court finds that the appointment of pro bono counsel is appropriate.  At this juncture, the Court appoints pro bono counsel only for the limited purpose of assisting Plaintiff in obtaining an Affidavit of Merit, if warranted.  If Plaintiff is able to timely secure an Affidavit of Merit, the Court may then consider whether pro bono counsel shall continue to represent Plaintiff for all purposes.  See Dorval, 2016 U.S. Dist. LEXIS 57290, *14 n. 5. On the other hand, if the investigation of the appointed attorney reveals that Plaintiff is unable to obtain an Affidavit of Merit to substantiate his case, the appointment shall not prevent the attorney from filing a motion to withdraw as

counsel.  See Robins, 2015 WL 6951693, at *5; Davidson v. Tan, 2011 WL 3841088, at *1 (D.N.J. Aug. 25, 2011).  Finally, if Plaintiff is unable to timely obtain the requisite Affidavit of Merit with the assistance of appointed counsel, Defendant may renew its motion for summary judgment at the appropriate time. See Dorval, 2016 U.S. Dist. LEXIS 57290, *14 n. 4.

In light of this Court's ruling on the Affidavit of Merit issue and the appointment of pro bono counsel, the Court finds Defendant's second argument--that the undisputed evidence establishes that Plaintiff's treatment met the standard of care and that Plaintiff has not produced any evidence to rebut Dr. Evans' expert opinions--to be premature.  Defendant may renew the argument at a later date, if appropriate, once the Affidavit of Merit issue has been resolved.

### C. **Plaintiff's Motion for Leave to Depose & Supplement**

On or around January 22, 2017, Plaintiff was released from prison [Docket No. 57].  Thereafter, on March 9, 2017, Plaintiff filed a motion for "leave to depose & supplement" [Docket No. 59], by which Plaintiff seeks leave to depose Defendant's expert, Dr. Evans, and to supplement the summary judgment record.  Plaintiff requests "some leeway" from the Court and notes that he "is no longer incarcerated and is in a better position to move his case forward with the permission of the Court." Id.

In light of this Court's appointment of pro bono counsel for the purpose of securing an Affidavit of Merit and the sixty-day extension of time within which to file such affidavit, the Court will administratively terminate Plaintiff's Motion for Leave to Depose & Supplement as premature. If, for example, no timely Affidavit of Merit is submitted by Plaintiff's appointed counsel, the question of whether Plaintiff should be permitted to depose Dr. Evans and supplement the record would be moot. Accordingly, the Court finds that it is in the best interests of judicial efficiency to defer the resolution of this motion until such time that an Affidavit of Merit is submitted, demonstrating that Plaintiff's case can proceed.

**IV.  CONCLUSION**

Accordingly, for the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Summary Judgment is denied without prejudice, and Plaintiff's Motion for Leave to Depose & Supplement is administratively terminated as premature. An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: March 21, 2017